IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| PRIMAL HARDWERE, LLC,<br><br>Plaintiff,<br><br>v.<br><br>PRIMAL WEAR, INC.,<br><br>Defendant. | Case No.: 1:21-cv-00232-JL |

**PLAINTIFF PRIMAL HARDWERE, INC'S OBJECTION TO DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO TRANSFER VENUE**

The plaintiff Primal Hardwere, LLC ("Plaintiff"), by its undersigned attorneys, Rath, Young and Pignatelli, PC, hereby respectfully objects to the Motion to Dismiss, or in the Alternative, to Transfer Venue (the "Motion") filed by defendant Primal Wear, Inc. ("Defendant"). In support of its objection, Plaintiff offers the following memorandum of support.

## INTRODUCTION

This case filed by a New Hampshire business asserting both New Hampshire and federal causes of action belongs here in New Hampshire where Plaintiff filed it before Defendant filed a complaint covering the same subject matter in the United States District Court for the District of Colorado. *See Primal Wear, Inc. v. Primal Hardwere, LLC*, Civil Action 1:21-cv-00999-KLM (D. Co.) (the "Colorado Action"). In January of 2021, Defendant sought out Plaintiff in Plaintiff's home state of New Hampshire and tried to bully Plaintiff into ceasing its use of the word PRIMAL in the promotion of Plaintiff's New Hampshire business. On March 18, 2021, after the parties failed to resolve their dispute through negotiations, Plaintiff commenced this action. On April 8, 2021, three weeks later, before filing the Motion or any other document in New Hampshire,

Defendant filed its Complaint in the Colorado Action. Defendant now seeks to use the later-filed Colorado Action as a reason to dismiss or transfer this earlier-filed action. Defendant, a corporation that sells its products through multiple national outlets and sends targeted advertisements to New Hampshire residents, should not be rewarded with the dismissal or transfer of this action as a result of instituting an unnecessary litigation with the obvious goal of increasing the litigation expenses and inconvenience to Plaintiff, a small New Hampshire business not subject to personal jurisdiction in Colorado.

## STATEMENT OF FACTS

Plaintiff is a New Hampshire limited liability company located in Franklin, New Hampshire. Complaint at ¶¶ 2, 7. Plaintiff manufactures, promotes, advertises, and sells sex toys and other sex-themed novelty items under the PRIMAL HARDWERE trademark. *Id.* at ¶¶ 7-8. Plaintiff has only nine employees, all of whom work at Plaintiff's sole place of business in Franklin. *See Primal Wear, Inc. v. Primal Hardwere, LLC*, Defendant Primal Hardwere, LLC's Motion to Dismiss, or, in the Alternative, to Transfer Venue Pursuant to 28 U.S.C. § 1404(a), or, in the Alternative, to Stay, at Exhibit A, Civil Action 1:21-cv-00999-KLM (D. Co.). All of Plaintiff's employees reside in New Hampshire, as do Plaintiff's owner and manager, and all of Plaintiff's business records are located at its offices in Franklin. *Id.*

Defendant is a Colorado corporation with a national presence. ECF No. 1 at 19. Defendant sells its cycling and other athletic apparel through a number of channels of trade, including eBay, Amazon.com, Performance Bike, Nashbar, and the website located at the URL http://www.primalwear.com ("Defendant's Website"). *Id.* Defendant has transacted business in New Hampshire. *Id.* at ¶ 6. Defendant regularly, frequently and intentionally solicits business in New Hampshire. *Id.* at ¶ 5. Through its interactive website, Defendant regularly targets New Hampshire residents in an online marketing campaign whereby when New Hampshire residents

2

visit the website of Defendant, Defendant obtains knowledge of such visits and then repeatedly attempts to engage New Hampshire residents by sending frequent advertisements to the social media feeds of those New Hampshire residents. *Id.* What's more, Defendant sold approximately $14,500 worth of retail apparel in New Hampshire and custom made nine orders for New Hampshire customers in 2020 alone. ECF No. 7 at 10.

On January 8, 2021, counsel for Defendant mailed a cease-and-desist letter to Plaintiff's general business counsel demanding that Plaintiff cease using the words PRIMAL and HARDWERE on clothing items. *Id.* at ¶ 24 (describing letter and attaching a copy). Plaintiff's counsel responded on January 21, 2021 without conceding that Defendant lawfully owned a broad monopoly in the word PRIMAL or WEAR, but by trying to avoid a lawsuit through an offer to sell Plaintiff's t-shirts on its website without the PRIMAL HARDWERE$^{TM}$ word mark and to use a modified PRIMAL HARDWERE$^{TM}$ logo on its apparel. *Id.* at ¶ 25 (describing letter and attaching a copy).

Defendant issued a response on February 18, 2021 rejecting Plaintiff's compromise solution. *Id.* at ¶ 26 (describing letter and attaching a copy). While Defendant asked Plaintiff to "let us know if [you] wish[] to resolve this matter," Defendant refused to participate in the give-and-take of negotiation, failing to make a counteroffer to Plaintiff's proposed compromise and instead stating that Defendant was "adamant that sales of traditional apparel be completely removed from the Primal Hardwere site." *Id.* at Exhibit C. Defendant also threatened Plaintiff with "escalating matters to Federal court," although it failed to set a deadline or otherwise indicate that such a suit was imminent. *Id.*

Instead of accepting Defendant's invitation to negotiate against itself, one month after receiving Defendant's February 18 letter indicating a refusal to negotiate, Plaintiff filed the Complaint in this action. Three weeks later, instead of filing an Answer or moving to dismiss this

action, Defendant filed the Colorado Action.

## ARGUMENT

This Court should deny the Motion because Defendant should not be rewarded for filing a second, duplicative lawsuit covering the same subject matter three weeks later after its efforts to intimidate Plaintiff failed to work as expected, and, more notably, Defendant is subject to personal jurisdiction in New Hampshire.

**I.   THIS COURT SHOULD NOT DISMISS OR TRANSFER THIS FIRST-FILED ACTION IN FAVOR OF DEFENDANT'S DUPLICATIVE, WASTEFUL, AND LATER-FILED COLORADO ACTION.**

**A.   Dismissal or Transfer is Improper in Light of the First-Filed Rule**

Nearly two hundred years ago, the Supreme Court announced the "first-to-file" rule, a doctrine intended to promote judicial efficiency and to avoid duplicative litigation, requiring that, "[i]n all cases of concurrent jurisdiction, the Court which first has possession of the subject must decide it." *Smith v. McIver*, 22 U.S. 532, 535, 9 Wheat. 532, 6 L.Ed. 152 (1824). In its current form in the First Circuit, the rule provides: "Where identical actions are proceeding concurrently in two federal courts, entailing duplicative litigation and a waste of judicial resources, the first filed action is generally preferred in a choice-of-venue decision." *Cianbro Corp. v. Curran-Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir. 1987); *TPM Holdings, Inc. v. Intra-Gold Indus., Inc.*, 91 F.3d 1, 4 (1st Cir. 1996) ("the usual practice is for the court that first had jurisdiction to resolve the issues and the other court to defer"); *see also Braley v. Sportex Products Co.*, 2002 WL 1676293 at *7 (D.N.H. July 16, 2002) (declining to transfer to Southern District of Ohio to be consolidated with an action there in part because the New Hampshire action was "the first-filed suit in this dispute by eight months").

The Court should apply the first-filed rule here because, as Defendant concedes, the two actions are identical and the Complaint was filed on March 18, 2021, three weeks before

Defendant initiated the Colorado Action. First Circuit law does not allow Defendant to file a duplicative Colorado Action covering the same subject matter as this action three weeks after the complaint in this action and then profit from that wasteful filing by having this action dismissed or transferred to Defendant's preferred forum. *See, e.g., Cianbro Corp. v. Curran-Lavoie, Inc.*, 814 F.2d at 11.

In the First Circuit, a "plaintiff's choice of forum should rarely be disturbed" under the first-filed rule unless there are "special circumstances" justifying a transfer, such as, first, "where the party bringing the first-filed action engaged in misleading conduct in order to prevail in a pre-emptive race to the courthouse" and, second, "where the balance of convenience substantially favors the second-filed action." *Transcanada Power Marketing, Ltd. v. Narragansett Elec. Co.*, 402 F. Supp. 2d 343, 347 (D. Mass. 2005). No special circumstances exist here.

### B.  No Misleading Conduct Warrants a Departure from the First-Filed Rule

A special circumstance exists when one party "has won the race to the courthouse by misleading his opponent into staying his hand in anticipation of negotiation or by reacting to notice of imminent filing by literally sprinting to the courthouse the same day." *Id*. Defendant does not allege misleading conduct but asserts that Plaintiff "singlehandedly" cut off negotiations and "surreptitiously" filed this litigation, ECF No. 7 at 5, but these are not grounds for disturbing plaintiff's choice of forum and even a cursory review of the parties' correspondence reveals that it was Plaintiff who sought a compromise solution and Defendant who expressed no interest in negotiation. After Defendant demanded that Plaintiff cease all sales of and all references to apparel bearing the disputed PRIMAL HARDWERE™ mark, *see* ECF No. 1 at ¶ 24, Exhibit A, Plaintiff offered the compromise solution of selling t-shirts without the PRIMAL HARWERE™ word mark and a modifying the PRIMAL HARDWERE™ logo used on apparel, *see id.* at ¶ 25, Exhibit B. In response, Defendant rejected Plaintiff's proposed compromise without making a

counteroffer, maintained its absolutist demand, and threatened Plaintiff with "escalating matters to Federal court." *See id.* at ¶ 26, Exhibit C. Defendant can wax poetic about "honest negotiations" if it wants, ECF No. 7 at 6, but the record shows that it was Defendant, not Plaintiff, who was unwilling to negotiate. In addition, Plaintiff's filing of this lawsuit was "surreptitious" only in that Plaintiff did not proclaim to Defendant an intention to file suit, but Plaintiff had no obligation to express an intent to file and, unsurprisingly, Defendant cites no authority for the proposition that Plaintiff had an obligation to inform it of an intent to file suit.

The bottom line is there was no misleading conduct by Plaintiff. To determine whether a party has engaged in "misleading" conduct to gain an advantage in filing suit, the District of Massachusetts has looked to whether a party has made "affirmative misrepresentations" or has "negotiated in bad faith simply to buy time in order to secure a more favorable forum." *Transcanada Power*, 402 F. Supp. 2d at 348-49. Defendant has not alleged that Plaintiff made any affirmative misrepresentations. Additionally, not only does Defendant not assert that Plaintiff negotiated in bad faith, its complaints about Plaintiff's supposedly "surreptitious" conduct acknowledge precisely the opposite.

Nor does threatening Plaintiff with a lawsuit somehow vest Defendant with an exclusive right to initiate suit in its preferred jurisdiction whenever it pleases. "[T]he mere fact that negotiations were ongoing does not create a special circumstance dispelling the presumption" favoring the first-filed action. *Island Oasis Frozen Cocktail Co., Inc. v. NUCO USA LLC*, 2011 WL 13254079 at *3 (D. Mass. June 2, 2011) (rejecting an argument that, because the plaintiff was aware the defendant "was considering filing litigation against it, it should have waited" for the defendant to initiate suit in its preferred jurisdiction). Such a rule would simply turn a "race to the courthouse" into a race to send a threatening email. *See Transcanada Power*, 402 F. Supp. 2d at 350 ("[W]here two sophisticated parties are negotiating at arm's length, in the absence of any

proof of misrepresentation or bad faith, the Court finds it inappropriate to deny the plaintiff the benefit of the first-filed rule.").

Defendant's opposite conclusion would upend the first-filed rule whenever negotiations have started between the parties. None of the cases cited by Defendant support that conclusion. In *Falafel Republic Mediterranean Foods, Inc. v. Tarazi Specialty Foods, Inc.*, the District of Massachusetts applied the well-settled First Circuit rule that special circumstances justify departing from the first-filed rule "where a party has won the race to the courthouse by misleading his opponent into staying his hand in anticipation of negotiation, or by reacting to notice of imminent filing by literally sprinting to the courthouse the same day." 2012 WL 12941889 at *6 (D. Mass. Sep. 28, 2012) (internal quotation marks and alterations omitted) (quoting *Transcanada Power*, 402 F. Supp. 2d at 347). As discussed above, however, Defendant has not alleged that Plaintiff made any misleading statements or sprinted to the courthouse. In contrast to Plaintiff's conduct here, the plaintiff in *Falafel Republic* had twice assured the defendant it would respond to its cease-and-desist letter while preparing its complaint thereby "misleading his opponent into staying his hand in anticipation of negotiation." *Id.* Those facts are not present here.

Even more tellingly, the *Falafel Republic* court distinguished that case from *Holmes Group, Inc. v. Hamilton Beach/Proctor Silex, Inc.*, 249 F. Supp. 2d 12, 16 (D. Mass. 2002), which much more closely tracks the facts at issue here. *See* 2012 WL 12941889 at *6. In *Holmes Group*, the defendant sent the plaintiff a cease-and-desist letter asserting patent infringement and the plaintiff responded two weeks later denying infringement. 249 F. Supp. 2d at 14. A month passed with no correspondence exchanged, and the plaintiff filed suit seeking a declaratory judgment that its product did not infringe on the defendant's patent. *Id.* The *Holmes Group* court found that the plaintiff "did not misrepresent its intention to negotiate" or "react to notice of imminent filing by literally sprinting to the courthouse the same day." *Id.* at 16. Similarly, here, Plaintiff responded

to Defendant's cease-and-desist letter two weeks after receipt without admitting infringement. While Plaintiff offered a compromise solution in its correspondence, any negotiations were cut off by Defendant's absolutist position and failure to make a counteroffer.  Just like in *Holmes Group*, Plaintiff filed an action seeking a declaratory judgment of noninfringement one month after the last correspondence between the parties.  Thus, without any affirmative misrepresentations, bad faith negotiation, or running to the courthouse upon notice of imminent filing, Plaintiff has not engaged in misleading conduct, and no special circumstances exist to reject the application of the first-filed rule.

      Defendant's final argument is that the first-filed rule should not apply because Plaintiff's suit requests declaratory judgment.  While some courts in other jurisdictions have expressed concerns about applying the first-filed rule in favor of declaratory judgment actions, courts in those cases faced compounding factors not present here.  *See, e.g., Collins v. Synthes USA Sales, LLC*, 2010 WL 1408966 at *2 (N.D. Ohio April 2, 2010) (rejecting the argument that the first-filed rule should not apply because the first-filed action was for a declaratory judgment and noting that a previous case expressing concern about declaratory judgment actions "was particularly concerned with the fact that the declaratory judgment action was filed in a venue wholly unrelated to the suit").  The cases cited by Defendant for the proposition that declaratory judgment actions should be disfavored are all merely applications of the well-settled exceptions to the first-filed rule for special circumstances including misrepresentations, bad faith negotiating, and racing to the courthouse to beat an imminent filing:

- In *Lexington Ins. Co. v. City of Phoenix, Ariz.*, 1996 WL 463672 at *1-2 (D. Mass. July 31, 1996), the plaintiff had filed its declaratory judgment action only after it was notified that the defendant intended to file suit imminently, in a classic "race to the courthouse" fact pattern not present here, and the court was concerned about the

plaintiff insurance company's attempts to avoid an Arizona jury in its dispute with the city of Phoenix. Defendant has alleged no such jury concerns in this case, nor could it.

- In *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007), the party bringing the declaratory judgment was attempting to circumvent the clear application of a forum-selection clause governing the dispute between the parties. No such forum selection clause exists here.

- In *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Associates, Inc.*, 16 F. App'x 433, (6th Cir. 2001), the Sixth Circuit found that the party filing the declaratory judgment had engaged in "bad faith" that was "overwhelmingly supported in the record" including misleading the defendants by continuing to pretend to negotiate even after they had already filed suit.

- In *Z-Line Designs, Inc. v. Bell'O Intern., LLC*, 218 F.R.D. 663, 665-67 (N.D. Cal. 2003), after holding that "the first to file rule should not be disregarded lightly," (internal quotation marks omitted), the court found that the plaintiff's action was "anticipatory" because the defendant had made specifically noted an intent to sue and provided and extended specific deadlines after which it would commence its litigation, making suit by the defendant "imminent." No deadlines were provided by Defendant and no such "imminent" suit is present here.

- In *Buzas Baseball, Inc. v. Board of Regents of Univ. of Ga.*, 189 F.3d 477 (Table) (10th Cir. 1999), the Defendant had sent a detailed settlement agreement to the plaintiff only 11 days before the plaintiff filed its suit. Here, like in *Holmes Group*, Plaintiff waited a month after the final correspondence between the parties cut off

negotiations. 249 F. Supp. 2d at 16.

- In *Sturdy Gun Safe, Inc. v. Rhino Metals, Inc.*, 2019 WL 652862 at *8 (E.D. Cal. 2019), the court found that the plaintiff had "engaged in misdirection," by indicating that they "would 'be in touch' regarding the latest settlement offer, but instead filed suit against [the defendant] without any notice or further communication." In contrast, here, there is no indication that Plaintiff made any affirmative misrepresentations.

Indeed, numerous courts have applied the first-to-file rule to declaratory judgment actions brought to resolve intellectual property disputes. *Micron Technology, Inc. v. Mosaid Technologies, Inc.*, 518 F.3d 897, 905, 86 U.S.P.Q.2d 1038, 1044 (Fed. Cir. 2008) (reversing dismissal of plaintiff's declaratory judgment complaint and noting first-to-file rule should have been given effect); *QFO Labs, Inc. v. Best Buy Stores, L.P.*, 2018 WL 3966313, *4-*5 (D. Minn. 2018) (applying first-to-file rule to declaratory judgment action); *Apple Inc. v. Fundamental Innovation Systems International LLC*, 2019 WL 1923106, *4-*5 (N.D. Cal. 2019) (applying the first-to-file rule to the first-filed declaratory judgment action); *Simpson Strong-Tie Company, Inc, Plaintiff, V. Oz-Post International, LLC*, 2018 WL 3956430, *7-*10 (N.D. Cal. 2018) (applying first-to-file rule to deny patentee's motion to transfer declaratory judgment action); *Virtual Fleet Management, LLC v. Position Logic, LLC*, 2017 WL 10276708, *2 (E.D. Tex. 2017) (transferring patentee's second filed infringement action to the forum where the accused infringer had a first-filed declaratory judgment action).

This Court should apply the first-filed rule to deny Defendant's Motion because there was no misleading conduct by Plaintiff that would justify departing from the rule.

### C.    The Convenience Factors Do Not Warrant Departure from the First-Filed Rule

A special circumstance also exists when the forum of the subsequently filed case is "substantially more convenient" than the forum of the first-filed case. *See, e.g., Holmes Grp., Inc. v. Hamilton Beach/Proctor Silex, Inc.*, 249 F.Supp.2d 12, 16 (D. Mass. 2002). Title 28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Notably, the defendant bears the burden of proving that a transfer is warranted under the convenience factors. *Momenta Pharm., Inc. v. Amphastar Pharm., Inc.*, 841 F.Supp.2d 514, 522 (D.Mass.2012). While the decision to transfer a case under § 1404 lies solely within the sound discretion of the trial court, there is a strong presumption in the First Circuit in favor of the plaintiff's choice of forum, and the burden of proof rests with the party seeking transfer. *Id.*

Plaintiff tellingly fails to demonstrate the convenience factors under § 1404(a) are decidedly in its favor—because they are not. The convenience of the witnesses and documents favors New Hampshire. Courts in the First Circuit have held that a venue transfer is inappropriate when it has the effect of merely shifting the inconvenience of witnesses and documents from one party to another. *See Gemini Investors Inc. v. Ameripark, Inc.*, 542 F.Supp.2d 119, 126–27 (D.Mass.2008) (collecting cases). More importantly, when weighing the convenience factors, a plaintiff's choice of forum should be given substantial deference. *Transcanada Power Marketing, Ltd. v. Narragansett Elec. Co.*, 402 F. Supp. 2d 343, 347; *see also Astro-Med, Inc. v. Nihon Kohden America, Inc.*, 591 F.3d 1, 12 (1st Cir. 2009); *Sophos, Inc. v. Rpost Holdings, Inc.*, No. 13-12856-DJC, 2014 U.S. Dist. LEXIS 73581, *9 (D. Mass. May 30, 2014) ("there is a strong presumption in favor of the plaintiff's choice of forum."); *Albert v. F/V Misty Dawn, Inc.*, 950 F.

Supp. 2d 321, 322 (D. Mass 2013) ("a plaintiff's choice of forum should rarely be disturbed.").

Accordingly, there are no special circumstances that warrant a departure from the first-filed rule.

## II. THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT

"When a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in this case, the 'prima facie' standard governs its determination." *U.S. v. Swiss American Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001) (citing *United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 987 F.2d 39, 43 (1st Cir. 1993) ("*Pleasant St. II*"). To determine whether to dismiss for lack of personal jurisdiction, the court need only "consider whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." *Boit v. Gar-Tec Products, Inc.*, 967 F.2d 671, 675 (1st Cir. 1992). "[I]n evaluating whether the prima facie standard has been satisfied, 'the district court is not acting as a factfinder; rather, it accepts properly supported proffers of evidence by a plaintiff as true and makes its ruling as a matter of law.'" *Swiss American*, 274 F.3d at 619 (quoting *Pleasant St. II*, 987 F.2d at 44)).

To assess personal jurisdiction in New Hampshire, the Court must determine whether New Hampshire's long-arm statute grants jurisdiction over the defendant and, "that the exercise of jurisdiction pursuant to that statute comports with the strictures of the Constitution." *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 144 (1st Cir. 1995). That two-step inquiry collapses to a single step in this case, however, because "[t]he New Hampshire long-arm statute applicable to foreign corporations has been interpreted as coterminous with federal constitutional limits on jurisdiction." *Dagesse v. Plant Hotel N.V.*, 113 F. Supp. 2d 211, 215 (D.N.H. 2000) (citing *Phillips Exeter Academy v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 287 (1st Cir. 1999));

12

*see also* Rev. Stat. Ann. § 293-A:15.10.

Personal jurisdiction may exist based on either general jurisdiction or specific jurisdiction. *See Foster-Miller*, 46 F.3d at 143-44. Defendant is subject to specific jurisdiction in New Hampshire. In order to exercise specific personal jurisdiction, three factors must be met:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the *Gestalt* factors, be reasonable.

*Annalee Mobilitee Dolls, Inc. v. Sterling Supply Co., Inc.*, No. 94–418–M, 1995 WL 674619, at *5 (D.N.H. August 14, 1995).

### A.   Plaintiff's Claims Arise Out of Defendant's Forum-State Activities

To satisfy the arising-out-of requirement, "a claim must 'arise out of, or be related to, the defendant's in-forum activities.'" *Mass. Sch. of Law at Andover, Inc. v. American Bar Ass'n*, 142 F.3d 26, 35 (1st Cir. 1998) (quoting *Ticketmaster-N.Y.*, 26 F.3d at 206). Defendant sought out Plaintiff in New Hampshire by sending threatening letters to Plaintiff asserting trademark rights in New Hampshire and requiring Plaintiff to stop selling certain items and threatening Plaintiff with litigation. This action arises specifically out of the letters sent by Defendant to Plaintiff in New Hampshire. *See Nova Biomedical Corp. v. Moller*, 629 F.2d 190, 195 (1st Cir. 1980) ("The mailing of a letter charging patent infringement and threatening litigation is clearly a 'purposeful' act by the defendant." (citations omitted)); *see also B & J Manuf. Co. v. Solar Indus., Inc.*, 483 F.2d 594, 598 (8th Cir. 1973), *cert. denied*, 415 U.S. 918 (1974) (finding that sending letters charging infringement and threatening suit "did, in a very real sense, constitute a transaction of business in" the state to which the letters were sent); *Der-Tex Corp. v. Thatcher*, 815 F. Supp. 41, 43-44 (D. Mass. 1993) (finding that phone calls alleging infringement satisfied the "arising from"

13

prong of the jurisdiction analysis); *Tuteur v. Crosley-Corcoran*, 961 F. Supp. 2d 333, 339 (D. Mass. 2013) (finding that the combination of sending a cease-and-desist letter and the "invocation of the [Digital Millennium Copyright Act] takedown process" were sufficient to satisfy due process for personal jurisdiction). Defendant's in-forum activities include sending letters in an attempt to control the Plaintiff's use of trademarks in New Hampshire. See ECF No. 1 at ¶¶ 5, 24, 26.

Defendant's in-forum activities include not only cease and desist letters but negotiations by telephone with Plaintiff concerning the Plaintiff's use of trademarks in New Hampshire. *Id.* In addition to negotiations, and more importantly, Defendant's in-forum activities include directly targeting New Hampshire consumers with advertising triggered through Defendant's interactive website. See ECF No. 1 at ¶ 5. Notably, Defendant does not deny these in-forum activities. See ECF No. 7 *passim*.

### B. Plaintiff's Contacts Represent Purposeful Availment

Defendant's threatening letters, negotiations asserting rights over Plaintiff's business in New Hampshire, and its targeting of New Hampshire consumers in New Hampshire each "represent a purposeful availment of the privilege of conducting activities" here. *Pleasant St. I*, 960 F.2d at 1089. In addition, Defendant has not only benefitted from New Hampshire's laws when engaging in the above contacts with New Hampshire but also by selling over $14,000 worth of goods in this state in 2020 alone. *See* ECF No. 7-1 at ¶ 10.

Defendant tries to minimize its commercial activity in New Hampshire by comparing it to Defendant's own worldwide sales totals. *See id.* But the First Circuit has examined and rejected this argument that Defendant can avoid specific jurisdiction in New Hampshire on the basis that its sales in New Hampshire represent a small percentage of total global sales. *See Vencendor Mfg. Co. v. Gougler Inc.*, 557 F.2d 886, 892 (1st Cir. 1977); (citing *Bullard v. Rhodes Pharmacal Co.*,

263 F. Supp. 79 (D. Mont. 1967) ("It is true that in terms of percentage of its total sales, defendant's contacts with [the forum state] were slight.  It is however fairly inferable that these contacts were limited only by the lack of demand in [the forum state] for defendant's products."). The First Circuit explained:

> [Defendant] points out that Puerto Rican sales account for less that .5 percent of its total sales volume.  So long as its sales there are part of a regular course of dealing, and are not isolated or exceptional events, we do not think relative sales volume is relevant.  A large corporation like General Motors could do an enormous trade with Puerto Rican consumers and still make the claim that [defendant] makes here.

*Id*.

In *Vencendor,* Wal-Mart could not avoid specific jurisdiction in New Hampshire for claims arising from its operation of stores here on the basis that New Hampshire represents a small percentage of Wal-Mart's total global sales, and Defendant should not be allowed to do the same. *Vencendor*, 557 F.2d at 892.

If anything, Defendant's comparison to global sales only proves Defendant's use of the New Hampshire market.  As of the 2020 census, New Hampshire's population was 1.38 million people.  *See* "Table 1: Apportionment Population and Number of Representatives by State: 2020 Census," *U.S. Census Bureau, U.S. Dep't of Commerce*, available at https://www2.census.gov/programs-surveys/decennial/2020/data/apportionment/apportionment-2020-table01.pdf, last accessed May 14, 2021.  The population of the United States is about 331 million people, so New Hampshire represents about 0.4% of the country's population, comfortably between the 0.1% of Defendant's total sales and 0.5% of Defendant's custom clients.  *Id.*  More importantly, even if New Hampshire did amount to a lower-than-expected percentage of Defendant's sales or custom orders, it is not the *relative* importance of New Hampshire to Defendant, but the *absolute* amount that Defendant uses New Hampshire, that is relevant for the purposeful availment inquiry.

In its Motion, Defendant points out that sending cease-and-desist letters, alone, does not establish sufficient contacts with the forum for the exercise of due process. ECF No. 7 at 10. However, Defendant's letters are not alone: they are accompanied by Defendant's negotiations in New Hampshire and by Defendant's sales, custom orders, and targeted advertisements. Defendant is effectively asking this Court to separate its New Hampshire contacts into two buckets. The first bucket, to which this lawsuit is clearly related, is Defendant's intimidating letters and negotiations with Plaintiff. The second bucket is Defendant's sales, custom orders, and targeted advertisements. Defendant argues that these buckets should be analyzed separately: that its letters, viewed alone, do not demonstrate purposeful availment, and that the sales, advertising, and custom orders do not relate to this lawsuit. But this is no different than arguing that the sale of a single defective product should be analyzed separately from the sale of numerous other non-defective products. Defendant's intimidating letters are contacts with New Hampshire that are a part of Defendant's business activities here, and this Court should reject Defendant's invitation to treat them as somehow separate.

In analyzing personal jurisdiction, the First Circuit does not treat cease-and-desist letters separate from other business contacts with the forum. *Nova Biomedical* 629 F.2d at 196-97. In *Nova Biomedical*, the First Circuit based its finding of jurisdiction on threatening letters sent to the forum together with other business activities in the forum. *Id*. There, the defendant had sent two letters to Massachusetts asserting infringement of his intellectual property rights while conducting business activities related to that intellectual property in Massachusetts, namely sales and marketing. *Id.* at 193-95. Here, Defendant sent a cease and desist letter regarding its PRIMAL marks, entered negotiations with Plaintiff regarding Plaintiff's use of the PRIMAL marks in New Hampshire, but Defendant also conducts business in New Hampshire under those marks. *See also Der-Tex Corp.*, 815 F. Supp. at 43-44 (finding that phone calls alleging infringement satisfied the

16

"arising from" prong of the jurisdiction analysis and upholding the exercise of jurisdiction based on defendant's other business contacts with the state); *Tuteur*, 961 F. Supp. 2d at 339 (finding that the combination of sending a cease-and-desist letter and the "invocation of the [Digital Millennium Copyright Act] takedown process" were sufficient to satisfy due process for personal jurisdiction).

Finally, the *Gestalt* factors favor the exercise of personal jurisdiction here. The five factors are:

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

*Pleasant St. I*, 960 F.2d at 1088 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (noting that "these considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required"). Once the plaintiff has established minimum contacts, the *Gestalt* factors only defeat jurisdiction if they establish that it "would be inconsistent with 'fair play and substantial justice.'" *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 206 (1st Cir. 1994) (quoting *International Shoe v. State of Wash., Office of Unemployment Compensation and Placement*, 326 U.S. 310, 319 (1945)).

It is reasonable for Defendant to be brought to court in New Hampshire where it sought out Plaintiff and initiated the present controversy. Here, New Hampshire has an interest in protecting Plaintiff, a New Hampshire company, from the harassment and unfounded demands of Defendant, as well as an interest in applying the New Hampshire law at issue in Counts Nine through Sixteen of the Complaint. *See Annalee Mobilitee Dolls, Inc.*, 1995 WL 674619, at *5 ("because the complaint alleges serious harm to a New Hampshire resident, the state has a substantial interest in the resolution of the dispute"). The judicial system can effectively resolve this controversy in New Hampshire. And finally, all jurisdictions have an interest in unreasonable restrictions on the use of

common words.

Accordingly, this Court should deny the Motion because personal jurisdiction over Defendant is proper.

## **CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests that this Court refuse to grant the Defendant's Motion to Dismiss, or in the Alternative, to Transfer Venue.

Respectfully submitted,

Dated: May 21, 2021

/s/ R. Terry Parker
R. Terry Parker, Esquire
RATH, YOUNG and PIGNATELLI, P.C.
One Capital Plaza
Concord, NH 03302-1500
Telephone: (603) 226-2600
Email: rtp@rathlaw.com

*Attorneys for Plaintiff*
*Primal Hardwere, LLC*

**CERTIFICATE OF SERVICE**

I, R. Terry Parker, hereby certify that I caused the foregoing document to be filed by ECF on the 20th day of May, 2021, by which service upon the following is accomplished:

Edward J. Sackman, Esq.
670 North Commercial Street, Suite 108
P.O. Box 1120
Manchester, NH 03105-1120
nsackman@bernsteinshur.com

.

                                            */s/ R. Terry Parker*
                                            R. Terry Parker